Opinion issued December 13, 2007













     




In The
Court of Appeals
For The
First District of Texas




NO. 01–06–01007–CR




DARYL JEROME ROBINSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 1051591




MEMORANDUM OPINION

          A jury convicted appellant, Daryl Jerome Robinson, of murder and assessed
punishment at confinement for 40 years. See Tex. Pen. Code Ann. § 19.02 (Vernon
2003).
          In three points of error, appellant contends that the evidence is factually
insufficient to support his conviction and that he received ineffective assistance of
counsel. 
          We affirm.
Background
          The complainant, Richard Lee, and his mother, Donna Lee, moved to Houston
as part of the evacuation of New Orleans during Hurricane Katrina. Richard moved
into a room at the Scottish Inn, and Donna moved into an apartment on the second
floor of the Catalina Apartments. Richard often stayed with Donna. Appellant lived
at the Scottish Inn and his cousin, Tonya, lived at the Catalina Apartments in an
apartment below Donna. Appellant often stayed with Tonya.
          On December 24, 2005, Richard’s sister, Shirley Lee, and her five children
arrived in Houston from Jackson, Mississippi, to celebrate Christmas with Richard
and Donna. At approximately 10:45 that evening, Donna and Shirley went to Wal-Mart for some last minute groceries. When they returned home and pulled into the
parking lot, Shirley saw three men coming around the side of the apartment building
and saw that one of them was carrying a gun. Donna recognized one of the men as
her downstairs neighbor, appellant, and she recognized appellant’s cousin, Rodney,
with the gun in his hand. Donna did not recognize the third man. In fear, Donna and
Shirley stayed in the car. 
          A few minutes later, Tonya pulled into the parking lot next to Donna, got out
of her car, and shouted at the men, “I told y’all about bringing this mother f—ing s—
around my house.” Appellant took the gun from Rodney and the three men went into
Tonya’s apartment.
          Donna and Shirley got out of the car and went to Donna’s apartment upstairs. 
Richard, who was there watching Shirley’s children, then went downstairs to Tonya’s
apartment, purchased marihuana from Rodney, and returned to Donna’s apartment at
approximately 11:50 p.m. 
          Moments later, Donna’s sister-in-law, Shaunice, who also lived in the Catalina
Apartments, called and talked with Richard. Shaunice had planned to celebrate
Christmas at midnight with Donna’s family, and Richard told her to come on over.
          A few minutes later, there was a loud knock on the side of Donna’s apartment. 
Shirley and Richard were in the living room and thought that Shaunice had arrived
and was playing games. Richard opened the door and said, “Oh, we know it’s you. 
Come on in here. It’s Christmas.” Richard stepped outside the front door with
Shirley on his heels. 
 
          Shirley immediately saw a gunman, whom she later identified as appellant,
standing on the stairs. She saw him lift his gun and point it at Richard. She heard a
noise she described as “chook, chook, boom” and saw a “big glow of fire [come]
through the gun.” Shirley ran back into the apartment and Richard ran in behind her. 
Richard locked the door, yelled, “Get the children!” and fell to the floor choking on
blood. Shirley could hear the gunman running down the metal stairs. Richard died
from a gunshot wound to his thigh that damaged his femoral artery. 
          Officer B. Evans, a Houston Police Department homicide investigator, testified
that he interviewed Shirley at the scene and that she told him that she saw the shooter
and the gun. Shirley identified the shooter as someone who lived downstairs, whom
she thought was named “Jermaine.” Evans testified that the name “Jermaine” is close 
to appellant’s middle name “Jerome” and that appellant had been named as the
shooter by more than one person at the scene. 
          The third man that Donna and Shirley had seen when they returned from Wal-Mart that night was Rodney’s friend, Daniel Lewis. Daniel testified that, on the night
of the incident, he was at Tonya’s apartment to celebrate Christmas. Daniel testified
that appellant was there and that he had a shotgun. Daniel identified the shotgun in
court as being similar to the one he saw appellant holding. Daniel testified that
appellant was “pumped” and “acting all wild” that night and was walking in and out
of the apartment. Daniel was outside with Rodney and appellant to shoot a round
with the shotgun when Tonya pulled into the parking lot and began yelling at
appellant about the gun. Daniel testified that Tonya threw appellant out of her
apartment and that appellant left at approximately 11:30 p.m. Daniel testified that he
did not see appellant leave with the shotgun, but that appellant left with a large white
trash bag full of clothes. Daniel testified that, shortly before midnight, Richard came
downstairs to Tonya’s apartment asking for marihuana, that Daniel gave marihuana
to Rodney, and that Rodney stepped outside the apartment with Richard. Rodney
came back inside and, about 10 minutes later, Daniel heard a single gunshot. Rodney
and Daniel heard Donna screaming and ran upstairs to help. 
          Appellant testified at trial that he was not at Tonya’s apartment at the time of
the shooting. Appellant testified that he had been living with Tonya, but that she had
thrown him out for “cooking drugs” in the apartment while the children were there. 
Subsequently, appellant went to live with Courtney Clark, the mother of his children. 
Appellant stated that he went to Tonya’s apartment on December 24, but that he did
not go inside. Appellant said that he left at 11:30 p.m. and went to Courtney’s
apartment. Appellant testified that his cousin, Isaac, came to Courtney’s and picked
him up at midnight and that they headed for Tonya’s apartment, but that the police
were there and would not let them into the area. Appellant testified that he went back
to Courtney’s apartment. 
          Appellant also testified that he does not own a gun or a car, but has, on
occasion, borrowed Richard’s car for the purpose of dealing drugs. Appellant 
testified that he has been a drug dealer since 1998 and that none of his 75 to 100
customers are located in the area around Tonya’s apartment.
          Appellant’s brother, Willie Sellers, testified that he had just come home from
having been incarcerated and was living at Tonya’s apartment at the time of the
incident. Willie testified that, on the evening of December 24, he and Tonya went to
the store and arrived back at the apartment at approximately 10:45 p.m. Willie
testified that appellant arrived at 11:00 p.m. to drop off Christmas gifts and that
Tonya told appellant he could not stay. Willie and appellant went outside, and
appellant said that Courtney was coming to get him. Willie went back inside Tonya’s
apartment and, minutes later, he heard three gunshots, a second or so apart. He and
Rodney heard someone screaming and Rodney ran upstairs. Willie walked to the
store to get away from the chaos and saw his cousin Isaac. Willie testified that he and
Isaac went to Courtney’s apartment and picked up appellant.
          Courtney testified that she lives approximately five minutes from Catalina
Apartments. Courtney said that she picked up appellant from Tonya’s apartment on
December 23 because appellant had “gotten into it” with Tonya and that appellant
stayed with her for “two or three nights.” Courtney also testified that she got off of
work at 2:00 p.m. on December 24 and went to Tonya’s apartment because appellant
was watching Courtney’s children there. Courtney testified that she stayed at Tonya’s
apartment until 7:00 or 7:30 p.m. and that she, appellant, and the children then left
and went back to Courtney’s apartment and that appellant stayed there all night. 
Courtney offered several additional versions of the facts that seemed to conflict.
 Sufficiency of the Evidence
          In his first point of error, appellant contends that the evidence is factually
insufficient to support his conviction for the offense of murder. Specifically,
appellant contends that Shirley’s testimony that appellant was the shooter was not
“logical or supported by other record evidence.”



A.      Standard of Review
          We begin the factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
133 (Tex. Crim. App. 1996). When conducting a factual-sufficiency review, we view
all of the evidence in a neutral light. See Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). We will set the verdict aside only if (1) the evidence is so weak
that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the
great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1,
10–11 (Tex. Crim. App. 2000). Under the first prong of Johnson, “[we] cannot
conclude that a conviction is ‘clearly wrong’ or ‘manifestly unjust’ simply because,
on the quantum of evidence admitted, we would have voted to acquit had [we] been
on the jury.” Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under
the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury’s verdict. Id.
          When conducting a factual sufficiency review, we must discuss the evidence
that, according to appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). The fact-finder alone determines what
weight to give contradictory testimonial evidence because that question depends on
how the fact-finder evaluates credibility and demeanor. Cain, 958 S.W.2d at 408–09.
As the determinor of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented. Id. at 407 n. 5.
          A person commits murder if, inter alia, he “intentionally or knowingly causes
the death of an individual” or he “intends to cause serious bodily injury and commits
an act clearly dangerous to human life that causes the death of an individual.” Tex.
Pen. Code Ann. § 19.02(b)(1)–(2). A firearm is, per se, a deadly weapon. Tex. Pen.
Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2007). When a deadly weapon is used
and death results, the inference of an intent to kill is almost conclusive. Flanagan v.
State, 675 S.W.2d 734, 745 n.9 (Tex. Crim. App. 1982).
B.      Analysis
          The State offered evidence of the commission of a murder by appellant. Donna
testified that, when she and Shirley returned from Wal-Mart, she saw appellant,
Rodney, and a third person, later identified as Daniel, outside the apartments and saw
that Rodney had a gun. Shirley testified that, as she and Donna waited in the car,
Donna identified appellant and Rodney by name. Donna and Shirley testified that
Tonya pulled into the parking lot, got out of the car, and shouted at the men about
having the shotgun. Donna and Shirley testified that they saw appellant take the gun
from Rodney. 
          Daniel testified that appellant had been “acting wild” that night and that
appellant and Rodney went outside to shoot some rounds. Daniel was outside
Tonya’s apartment with Rodney and appellant when Tonya pulled into the parking
lot and began yelling at appellant about having the gun. Daniel identified the shotgun
in court as being similar to the one he saw appellant holding. 
          Daniel testified that Tonya threw appellant out of her house that night because
of the shotgun and that appellant left at approximately 11:30 p.m. Daniel testified
that appellant had a large white trash bag full of items when he left. Donna, Shirley,
and Daniel testified that Richard was downstairs at Tonya’s apartment purchasing
drugs from Rodney at some point between 11:30 and 11:50 p.m. 
          The evidence shows that, approximately 10 minutes after Richard returned to
Donna’s apartment upstairs, a knock was heard on the side of Donna’s apartment.
When Shirley started to follow Richard outside the front door of Donna’s apartment,
Shirley immediately saw appellant standing on the stairs. Shirley recognized
appellant from having seen him earlier that evening when she and Donna returned
from Wal-Mart. Shirley saw appellant lift his gun and point it at Richard. Shirley
identified the shotgun shown at trial as being the same as the one she saw appellant
holding. Shirley heard a noise she described as “chook, chook, boom” and saw a “big
glow of fire [come] through the gun.” Shirley testified that she ran back into the
apartment and Richard ran in behind her. Richard locked the door, yelled, “Get the
children!” and fell to the floor choking. The evidence shows that Richard died from
a gunshot wound to his thigh that damaged his femoral artery. 
          The record shows that Shirley positively identified appellant as the shooter to
Officer Evans at the scene immediately after the shooting, then later identified
appellant within seconds from a photo-spread, then identified him again in the
courtroom during trial. Officer Evans also testified, without objection, that appellant
was named as the shooter by more than one person at the scene.
          Appellant complains that Shirley’s testimony was “the only direct evidence of
[his] guilt.” Appellant seems to contend that Shirley’s testimony, without more, is
insufficient to implicate appellant in the murder. However, a positive identification
of the defendant as the perpetrator is factually sufficient to support a conviction if the
jury reasonably believes the witness. See Goodman v. State, 66 S.W.3d 283, 286–87
(Tex. Crim. App. 2001); Moore v. State, 446 S.W.2d 877, 878 (Tex. Crim. App.
1969).
          In addition, appellant contends that Shirley’s testimony is insufficient because
it is not “logical.” Specifically, appellant contends that Shirley could not have seen
the shooter from where she alleges she was standing at the time of the shooting.
Shirley testified that the lower half of her body was in the doorway of Donna’s
apartment and that the upper half of her body was extended outside the door.
Appellant contends that, because he is over six feet tall and Richard was only five-feet-four-inches tall, and the evidence shows that Richard was shot straight through
the thigh, without any upward trajectory, appellant would have to have been standing
down the stairs at a level below Richard. Appellant contends that Shirley could not
have seen him from her vantage point.
          The record shows, however, that Shirley was directly behind Richard when
they started out the door of Donna’s apartment and that Richard was shot from less
than four feet away. Shirley testified that she saw appellant raise the shotgun and saw
“fire” come out of the gun. From this evidence, the jury could have reasonably
concluded that Shirley saw appellant shoot Richard.
          Further, appellant contends that he presented evidence of an alibi. The record
shows that, in contrast to the State’s evidence, appellant presented testimonial
evidence that he was at Courtney’s apartment, and not at Tonya’s, at the time of the
shooting. Willie testified that appellant came over to Tonya’s apartment at 11:00 p.m. 
on December 24th to drop off Christmas gifts to the children and that Tonya told
appellant that he could not stay. Willie testified that he and appellant went outside
and that appellant stated that Courtney was coming to get him. According to his
testimony, Willie then went back inside Tonya’s apartment. Appellant testified that
he left Tonya’s apartment at 11:30 p.m. and went to Courtney’s apartment. However,
from this evidence, the jury could have reasonably concluded that appellant was still
outside of Tonya’s apartment when Richard came downstairs to buy marihuana from
Rodney.
          Willie testified that minutes after he went back inside Tonya’s apartment, he
heard three gunshots, a second or so apart. Willie further testified that, after the
shooting, he walked to the store, where he ran into Isaac. Willie testified that he and
Isaac went to Courtney’s apartment at approximately 12:15 a.m. and appellant was
there. The evidence shows, however, that Courtney lived only five minutes away
from Donna’s apartment.
          Courtney initially testified that, on December 24th, she was at work until 2:00
p.m., that she then met up with appellant and her children at Tonya’s apartment, and
that she, appellant, and the children left there at 7:00 or 7:30 p.m. Courtney testified
that when they left, they went to Courtney’s apartment and appellant stayed with her
all night. However, Courtney later testified inconsistently concerning appellant’s
whereabouts and the time frame. Courtney also testified that she had been shopping
on December 24th and did not pick up appellant until 11:00 and 11:30 p.m. that night. 
Courtney subsequently testified that she picked up appellant from Tonya’s apartment
on December 24th at “[a]round 9:00, 9:30.” She then testified that “[i]t was like,
maybe, like, 9:45, 10:15.” Courtney first testified that appellant stayed at the
apartment all night, then later testified that appellant left her apartment that night at
“approximately, maybe, like, 12:15” a.m., when his cousin came to get him. Courtney
also testified that appellant spent the evening of December 24th helping her get her
children “ready for school the next day.” When asked if her children went to school
on Christmas Day, Courtney first responded that the children had indeed gone to
daycare, then she responded that she had been referring to December 24th. Courtney
had previously testified that appellant kept her children at Tonya’s on the 24th.
          The jury is the sole judge of the facts, the credibility of the witnesses, and the
weight to be given the witnesses’ testimony. Cain, 958 S.W.2d at 407 n.5; Jaggers
v. State, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). As
the determiner of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented. Cain, 958 S.W.2d at 407 &
n.4; McKinny v. State, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.] 2002,
no pet.). In this case, the jury made the determination that Shirley’s testimony was
credible. After reviewing all of the evidence in a neutral light, we cannot conclude
that the evidence is so weak that the verdict is clearly wrong and manifestly unjust
or that the verdict is against the great weight and preponderance of the evidence. See
Johnson, 23 S.W.3d at 11. We hold that the evidence is factually sufficient to support
appellant’s conviction.
          Accordingly, we overrule appellant’s first point of error.
Assistance of Counsel
          In his second and third points of error, appellant contends that he was denied
his Sixth Amendment right to effective counsel. In his second point of error,
appellant contends that his trial counsel improperly elicited testimony from appellant
concerning inadmissible prior criminal convictions. In his third point of error,
appellant contends that his trial counsel “failed to object to hearsay evidence that
impeached testimony of Courtney Clark’s alibi testimony.” 
A.      Standard of Review
          Appellant was entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel’s performance fell below an objective standard of reasonableness,
and (2) but for counsel’s unprofessional error, there is a reasonable probability that
the result of the proceeding would have been different. Strickland v. Washington, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Andrews v. State, 159 S.W.3d 98, 102
(Tex. Crim. App. 2005). “Reasonable probability” means a “probability sufficient to
undermine confidence in the outcome.” 466 U.S. at 694, 104 S. Ct. at 2068.
          To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. Robertson, 187 S.W.3d at 482–83; Gamble v. State,
916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). A failure to make
a showing under either prong defeats a claim for ineffective assistance. Rylander v.
State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).
          As the reviewing court, we consider the totality of the representation.
Robertson, 187 S.W.3d at 483. Isolated instances of errors of commission or omission
will not render counsel’s performance ineffective. Id. We consider the adequacy of
assistance as viewed at the time of trial, not through hindsight. Id.
          Allegations of ineffectiveness must be firmly founded in the record. Bone v.
State, 77 S.W.3d 828, 833 & n. 13 (Tex. Crim. App. 2002). Generally, the record on
appeal is undeveloped, and a silent record that provides no explanation for counsel’s
actions will not overcome the strong presumption of reasonable assistance. Rylander,
101 S.W.3d at 110–11.
 
B.      Prior Convictions
          In his second point of error, appellant contends that his trial counsel was
ineffective because, during examination of appellant concerning his prior convictions,
counsel “inartfully” and improperly included prior convictions that were inadmissible
under Rule 609(a). Specifically, appellant complains that his trial counsel elicited
testimony from him concerning his conviction, in year 2000, for possession of a
controlled substance and his convictions, in 2003, for possession of marihuana,
evading detention, and driving while intoxicated. Appellant contends that he was
harmed by the introduction of these offenses because credibility was critical in the
case, the testimony of his alibi witness, Courtney, “was fraught with confusion over
dates and time,” and “the complained-of additional convictions only made . . .
appellant less credible.”
          Rule of Evidence 609(a), which governs the admissibility of prior convictions,
provides as follows:
(a) General Rule: For the purpose of attacking the credibility of a
witness, evidence that the witness has been convicted of a crime shall be
admitted if elicited from the witness or established by public record but
only if the crime was a felony or involved moral turpitude, regardless of
punishment, and the court determines that the probative value of
admitting this evidence outweighs its prejudicial effect to a party.

Tex. R. Evid. 609(a). 

          Applying rule 609(a), the complained-of convictions, which the record shows
were misdemeanors and which did not involve moral turpitude, were not admissible. 
See Tex. R. Evid. 609(a); Denman v. State, 193 S.W.3d 129, 135 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d) (concluding that drug trafficking is not
crime of moral turpitude); Moore v. State, 143 S.W.3d 305, 314 (Tex. App.—Waco
2004, pet. ref’d) (concluding that driving while intoxicated is not crime of moral
turpitude); see also Dominguez v. State, 07-02-0264-CR, 2003 WL 834778, at *2
(Tex. App.—Amarillo Mar. 4, 2003, pet. ref’d) (mem. op., not designated for
publication) (concluding that evading arrest is not crime of moral turpitude).

          However, appellant has not shown that there is a reasonable probability that,
but for his counsel having permitted the jury to hear the inadmissible evidence of
these convictions, the outcome of the proceeding would have been different. See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Andrews, 159 S.W.3d at 102. As to
the complained-of testimony concerning appellant’s misdemeanor convictions for
drug possession, the record also shows that appellant testified to having had five prior
felony convictions for delivery and possession of a controlled substance. In addition,
appellant testified that he is a drug dealer, that he maintains 75 to 100 customers, and 

that he cooks crack cocaine in the presence of children. 

          As to the complained-of testimony concerning appellant’s misdemeanor
convictions for driving while intoxicated and evading arrest, which are not crimes
involving moral turpitude, appellant also testified that he was convicted of having
assaulted his ex-girlfriend Courtney. Misdemeanor assault of a female is a crime of
moral turpitude. See Jackson v. State, 50 S.W.3d 579, 592 (Tex. App.—Fort Worth
2001, pet. ref’d) (considering misdemeanor assault of female victim by male);
Hardeman v. State, 868 S.W.2d 404, 405–06 (Tex. App.—Austin 1992, pet. dism’d)
(holding that conviction for misdemeanor assault by man against woman is crime
involving moral turpitude and admissible as impeaching evidence under rule 609). 
Hence, appellant has not shown that his credibility was prejudiced by the introduction
of the misdemeanor offenses. 

          The record shows that the evidence of the misdemeanor convictions was not
developed by the State on cross-examination of appellant or raised in the State’s
closing argument. Further, the trial court instructed the jury not to consider
appellant’s prior convictions as evidence of his guilt. We must presume that the jury
followed the trial court’s instructions. See Wesbrook v. State, 29 S.W.3d 103, 115–16
(Tex. Crim. App. 2000).

          When, as here, appellant fails to meet the prejudice prong, we need not address
the question of counsel’s performance on these points. See Boyd v. State, 811 S.W.2d
105, 109 (Tex. Crim. App. 1991). The failure to make a showing under either of the
required prongs of Strickland defeats a claim for ineffective assistance of counsel.
Rylander, 101 S.W.3d at 110–11. We conclude that appellant has not met his burden
to show ineffective assistance of counsel by a preponderance of the evidence.

          Accordingly, appellant’s second point of error is overruled.

C.      Failure to Object to Hearsay                    In his third point of error, appellant contends that he was denied effective
assistance of counsel because his trial counsel failed to object to hearsay testimony. 
Specifically, appellant complains of the following colloquy that took place during the
State’s examination of Officer M. Sosa of the Houston Police Department:

                    [State]:        And did you interview . . . somebody named Courtney
Clark?
                    [Sosa]:         Yes, I had an occasion to talk with her.
                    [State]:        And what did she have to say?
                    [Sosa]:         Basically there was nothing that she could assist with the
case, with the investigation.
          [State]:        Did she say she knew anything?
          [Defense]:   Objection. Asked and answered.
          [Court]:       Sustained. 
 
          Appellant contends that Officer Sosa’s testimony “clearly constitutes hearsay”
and that appellant’s trial counsel’s failure to object on that basis constitutes
ineffective assistance of counsel. However, appellant also acknowledges that “Sosa’s
summary hearsay statement was vague and indefinite as to exactly what [Courtney]
may have said and what was consistent, or inconsistent, in her testimony.”
          Hearsay is “a statement, other than one made by the declarant while testifying
at trial or hearing, offered in evidence to prove the truth of the matter asserted.” Tex.
R. Evid. 801(d) (emphasis added). Hearsay statements are inadmissible except as
provided by statute or other rule. Tex. R. Evid. 802; see Tex.R. Evid. 803 (providing
exceptions). An extrajudicial statement that is offered for the purpose of showing
what was said rather than for proving the truth of the matter stated therein, does not
constitute hearsay. Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995);
Gonzales v. State, 190 S.W.3d 125, 133–34 (Tex. App.—Houston [1st Dist.] 2005,
pet. ref’d).
           Here, as appellant acknowledges, Officer Sosa did not testify regarding any
statement that was allegedly made by Courtney. Thus, Sosa’s testimony did not
constitute hearsay. See Tex. R. Evid. 801(d). As such, appellant’s trial counsel was
not ineffective for failing to object on that basis.
          Accordingly, we overrule appellant’s third point of error.
 
 
Conclusion
We affirm the judgment of the trial court.
                                                                   
 
 
 
Laura Carter Higley
Justice
 
Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).