

# NUMBER 13-19-00564-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

FREDERICK JAMES FURMAN II,                                          Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

**On appeal from the 36th District Court
of San Patricio County, Texas.**



# NUMBER 13-19-00565-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

FREDERICK JAMES FURMAN II
A/K/A FREDERICK J. FURMAN III,                                    Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

---

On appeal from the 36th District Court
of San Patricio County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Longoria**

In two cause numbers, which we address together, appellant Frederick James

Furman II, a/k/a Frederick J. Furman III, pleaded guilty to criminal mischief and credit card

or debit card abuse, both state-jail felonies.[1] *See* TEX. PENAL CODE ANN. §§ 28.03(b)(4)(A), 32.31. Furman was placed on community supervision, which the trial court subsequently revoked. By two issues, Furman argues that: (1) his sentence constituted cruel and unusual punishment; and (2) he received ineffective assistance of counsel. We affirm.

## I.  BACKGROUND

On September 8, 2017, Furman entered into a plea bargain agreement with the State to plead guilty to the charges of criminal mischief and credit card or debit card abuse, alleged to have occurred on February 25, 2017 and April 29, 2017, respectively. Furman stipulated that on February 25, 2017, he repeatedly kicked a jail cell door in the Aransas Pass Police Department booking room while he was being confined for multiple municipal court warrants. According to his stipulation, Furman broke the lock, left a "shoe print" on the door, and caused the door to become "caved in." He further stipulated that on April 29, 2017, a woman he was with stole a purse from a female shopper at a grocery store and that he attempted to use the credit cards inside the wallet. The trial court sentenced Furman to two years' confinement in a state jail facility but suspended the sentence, placing Furman on five years of deferred-adjudication community supervision.

On March 19, 2018, the State filed a motion to revoke Furman's community supervision. The State alleged that Furman violated the terms of his supervision by failing to report to his probation officer for several months, failing to report a change of address within two working days, failing to pay fees, and failing to submit to random drug tests.

---

[1] Trial court cause number S-17-3355CR, which corresponds with appellate cause number 13-19-00564-CR, was for criminal mischief. Trial court cause number S-17-3390CR, which corresponds with appellate cause number 13-19-00565-CR, was for credit card or debit card abuse.

Furman conceded that the allegations were true. The trial court continued Furman on community supervision but extended the length of his supervision period by one year.

On August 26, 2019, the State filed another motion to revoke, again alleging that Furman had failed to report to his probation officer for several months, failed to submit to random drug tests, and was in financial arrears. Furman confessed that these allegations were true. The trial court found the allegations to be true and asked the State for recommendations regarding the disposition. The State informed the trial court that it had agreed on a recommendation with Furman of revocation in both cause numbers and the imposition of a sixteen-month sentence. The trial court revoked Furman's community supervision in both causes and sentenced him to two years' imprisonment in state jail in each cause, to be served concurrently. This appeal ensued.

## II.    CRUEL AND UNUSUAL PUNISHMENT

In his first issue, Furman asserts that the sentences imposed by the trial court were disproportionate to the seriousness of the offenses committed. *See* U.S. CONST. amend. VIII.

### A.    Standard of Review and Applicable Law

A sentence which falls within the limits prescribed by a valid statute is usually not excessive, cruel, or unusual. *See Trevino v. State,* 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd). However, a sentence that is within the applicable range of punishment may nevertheless be cruel or unusual in the "exceedingly rare" or "extreme" case in which the sentence is grossly disproportionate to the offense. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *see* U.S. CONST. amend. VIII; *Solem v. Helm*, 463 U.S. 277, 303

(1983) (concluding that life imprisonment without parole was a grossly disproportionate sentence for the crime of "uttering a no-account check" for $100). "To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). "In the rare case in which the threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (citing *Graham*, 560 U.S. at 60). "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* (citing *Graham*, 560 U.S. at 60).

"However, in order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Noland*, 264 S.W.3d at 151; *see* TEX. R. APP. P. 33.1(a); *see also Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (concluding that a party must object to preserve error, even for constitutional issues).

## B.    Discussion

Furman acknowledges that he never properly or timely objected to his sentences as being cruel and unusual in the trial court. The trial court imposed Furman's sentences without any objections. In other words, Furman argues that the punishment he received

was disproportionate to the underlying offenses for the first time on appeal. Therefore, we conclude that Furman failed to preserve this issue for appeal. *See* TEX. R. APP. P. 33.1(a); *Noland*, 264 S.W.3d at 151.

Moreover, even assuming Furman preserved error, the sentences he received were not excessive or disproportionate. It is true that Furman received the maximum sentence possible for each state-jail felony. *See* TEX. PENAL CODE ANN. § 12.35 (stating that punishment for a state jail felony shall not exceed two years or be less than 180 days). However, the trial court elected not to cumulate the sentences, but rather ordered them to run concurrently. In any event, sentences within the statutory range are usually not excessive, cruel, or unusual. *See Trevino,* 174 S.W.3d at 928. Furthermore, Furman does not reference any evidence of the sentences imposed for other similar crimes in Texas or other jurisdictions for comparison to the present case. *See* TEX. R. APP. P. 38.1(i). We overrule his first issue.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Furman argues that he received ineffective assistance of counsel. More specifically, he argues his counsel was ineffective for failing to raise the issue of cruel and unusual punishment to the trial court.

### A.    Standard of Review and Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id*.; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.—

6

Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, then an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Because "the record is generally underdeveloped," direct appeal is usually an inadequate vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain her reasoning behind her performance. *See id*. For that reason, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687.

7

**B. Analysis**

In a single paragraph, Furman argues that he was denied effective assistance of counsel because his counsel failed to properly object to his sentence as constitutionally disproportional or cruel and unusual when the trial court imposed the sentence. Furman argues that had his counsel objected, he could have effectively demonstrated on appeal that his sentences were disproportional to the offenses committed. However, given that Furman had confessed to all the allegations in the motion to revoke being true, and further given that Furman's sentence was within the statutory limit, Furman's counsel might simply have concluded that any objection to the sentence was futile. Even though Furman received the maximum sentence allowable, we cannot say that Furman's sentence was "severe" in light of the harm he caused and threatened. *Simpson*, 488 S.W.3d at 323. As we discussed above, Furman stipulated that he repeatedly kicked a jail cell door while he was being confined for multiple municipal court warrants. He kicked the door with enough force to cave in the door, break the lock, and leave a shoe print on the door. Furman further stipulated that he attempted to use credit cards that were stolen by his acquaintance. Thus, using the *Simpson* factors, Furman's counsel might have concluded that there was no inference of disproportionality. *See id.* Therefore, we cannot conclude that failing to lodge an objection to the sentence in this case constituted deficient conduct. *See Strickland*, 466 U.S. at 687. We overrule Furman's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
15th day of April, 2021.