Opinion issued October 29, 2009












 

 

 

 

 








In The

Court of Appeals

For The

First District of Texas







NO. 01-09-00213-CR

____________


SHERRIL LEE ROOKS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 2nd District Court

Cherokee County, (1) Texas

Trial Court Cause No. 16,660







MEMORANDUM OPINION

 Appellant, Sherril Lee Rooks, pursuant to a plea agreement with the State,
pleaded guilty to the felony offense of driving while intoxicated. (2) The trial court
sentenced appellant to ten years confinement, suspended the sentence, placed him on
community supervision for eight years, and assessed a $500 fine. The State
subsequently moved to revoke community supervision, the terms of which required
appellant to "commit no offense against the laws of this or any State," avoid
"injurious or vicious habits," and "abstain from the use of narcotic or habit forming
drugs without a doctor's prescription." In its motion, the State alleged that appellant
had violated several conditions of community supervision by inhaling volatile
chemicals. (3) In two points of error, appellant contends that the trial court violated the
Fifth Amendment by compelling him to be a witness against himself and his trial
counsel provided ineffective assistance by neither objecting to the trial court's
questioning that compelled appellant to be a witness against himself nor advising
appellant to remain silent.

 We affirm.

Background

 On November 6, 2008, the trial court held a hearing on the State's motion to
revoke appellant's community supervision. The State alleged that appellant violated
the conditions of community supervision requiring that appellant "avoid injurious or
vicious habits" and "abstain from the use of narcotic or habit forming drugs without
a doctor's prescription." 

 At the beginning of the hearing, the trial court informed appellant of his
privilege against self-incrimination. Appellant's Probation Officer Ouida Woodroof
then testified that appellant had incurred "three new . . . inhalants charges" after
appellant was placed on community supervision on April 13, 2007. Jacksonville
Police Officer James Hogg testified that he arrested appellant on two occasions after
appellant's ex-wife had called to report that he was "huffing paint." After appellant's
trial counsel presented his closing argument, the following exchange occurred
between the trial court, trial counsel, and appellant:

 [The trial court]: Well, I differ with you, [trial counsel].
[Throwing Mr. Rooks in the penitentiary] is
not the easy thing and it's not the thing that
has been tried. And unfortunately here we are
today and he's been to three different rehab
places and now he's sniffing paint. Now, I'm
no expert, but when a man is down to sniffing
paint, he's desperate. I mean that's beyond
the [pale]. That's beyond comprehension,
that a man wants to get high so bad he just
inhales paint. I mean that's the lowest form
of-I mean just to cover yourself in paint. I
mean everything they've done has seemed to
make it worse. It's one thing to get on pain
pills. It's another thing to be sniffing paint.
He's digressing with treatment. He's not
progressing. I don't know how many brain
cells he has-You know, it's amazing he's
even with us. Mr. Rooks, I don't know [that
I] have any solutions for you. And you say,
well, society has tried.

 [Appellant]: Sir, I was hurting real bad at that time.


 [The trial court]: I understand.


 [Appellant]: I hadn't messed up but that once since I had
come home from that clinic. And I done all
my probation, I paid my money, I done the
DWI classes. I've been going to NA before I
had messed up that once. I'm only asking for
just this one time.


 [The trial court]: Where do I send you? I can't get you off the
pain killers. When you don't get pain killers
you sniff paint. You pled guilty to three
DWIs. Who are you going to run over and
kill? The last time they went out there to
arrest you, you were sitting in the driver's seat
of a car.

 [Appellant]: That car didn't run, sir. It was left at my
house because it didn't run. I just went out
and sat in the car to get away from my house.


 [The trial court]: So you could sniff paint?


 [Appellant]: At that time I was hurting real bad and I just
come home from that clinic. The reason that
I come home from that clinic at that time is I
had to be at court the next day. So, instead of
staying in the clinic I had to check out and
they gave me like five prescriptions and sent
me home. And I was hurting sitting there and
I had to be in court the next morning. I didn't
know what else to do.

 

 [The trial court]: So you sniffed paint?


 [Appellant]: Really, I was gonna spray some stuff that you
spray on vinyl and I was in a car with no
ventilation and I begin to spray it and I wind
up, evidently, I guess that's what I done. To
tell you the truth, I don't really know what
happened at that time in that car. Outside of
what the police officer says, I did not have the
intent of inhaling anything.

 

 [The trial court]: Mr. Rooks, I'd prefer you take the witness
stand than to sit there and argue with me. But
that's not the first time they'd been out there
and you were sniffing paint. I'm not fussing
at you. Well, maybe I am. You act like this
was an individual, unique experience. It had
happened before.

 

 [Appellant]: But I'm saying I am trying to hold together
and I was doing good for this last time and
doing everything that was on my probation,
and I believe I can do right. I believe this is
the only opportunity that I'll have before
somebody does send me away to prison for
my full time and this is probably my last
chance.


 [The trial court]: You tell me what the alternative is.

 

 [Appellant]: Sir, I've been in jail for 150 days which is
longer than I've been in any program, longer
than I've ever been anywhere away from my
family in twenty-six years. That jail does
make a difference. You realize that even
though you've lost because of injuries, you
lose your house, you lose your cars, you lose
different things, but you have a family. When
you go to jail that's taken away from you. 
And I've realized that sitting in that jail for
five months now that the most important thing
in life is my family.


The trial court then granted the State's motion to revoke appellant's community
supervision and assessed his punishment.

Right Against Self Incrimination In his first point of error, appellant argues that the trial court "violated [his]
Fifth Amendment right against self-incrimination by compelling him to be a witness
against himself."

 Every individual has the right to avoid self-incrimination by exercising the
privilege provided by the Fifth Amendment of the United States Constitution. See
U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be
a witness against himself . . . ."); see Chapman v. State, 115 S.W.3d 1, 5 (Tex. Crim.
App. 2003). However, the Fifth Amendment speaks of compulsion; it does not
preclude a defendant from testifying voluntarily in matters which may incriminate
him. Minnesota v. Murphy, 465 U.S. 420, 427, 104 S. Ct. 1136, 1142 (1984) (citing
United States v. Monia, 317 U.S. 424, 427, 135 S. Ct. 409, 410 (1943)). Further, the
privilege against compelled self-incrimination is not ordinarily self-executing. 
Chapman, 115 S.W.3d at 6. A defendant who desires the protection of the privilege
must assert it or he will not be considered to have been "compelled" within the
meaning of the Fifth Amendment. Murphy, 465 U.S. at 427-28, 104 S. Ct. at
1142-43. A defendant must also timely assert his privilege. Chapman, 115 S.W.3d
at 6; see Murphy, 465 U.S. at 427-28, 104 S. Ct. at 1142-43. A defendant may waive
the privilege by voluntarily becoming a witness. Chavez v. State, 508 S.W.2d 384,
385 (Tex. Crim. App. 1974). The Texas Code of Criminal Procedure allows the
admission into evidence of such a voluntarily offered statement "made by the accused
in open court." Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).

 Here, the undisputed testimony of Parole Officer Woodruff and Officer Hogg
established that appellant had been arrested twice for "huffing" or sniffing paint since
he was placed on community supervision. Appellant's sniffing of paint violated the
condition of his community supervision that he abstain from the use of narcotic or
habit forming drugs without a prescription. Appellant was not called to testify as a
witness. However, after trial counsel made his closing argument and the trial court
began making statements in preparation for its ruling, appellant initiated a dialogue
with the trial court. In attempting to explain why he had been sniffing paint and
asking the court to sympathize with him, appellant made an unsolicited plea for
mercy. Nothing in the record indicates that appellant's statements during this
dialogue were involuntary. The trial court had informed appellant of his privilege
against self-incrimination and made no threats should appellant choose to assert that
privilege. Appellant did not choose to assert his privilege at any point during the
exchange. 

 Appellant had the burden to assert his privilege. Instead, he chose to speak to
the court and ask for mercy. Under these facts, we cannot conclude that the trial court
compelled appellant to become a witness against himself within the meaning of the
Fifth Amendment. Accordingly, we hold that the trial court did not violate
appellant's Fifth Amendment right against compelled self-incrimination. We overrule appellant's first point of error. 

Ineffective Assistance of Counsel 

 In his second point of error, appellant argues that his trial counsel provided
ineffective assistance because he "failed to object to the [trial court's] questioning" of
appellant and "made no effort to attempt to explain to [appellant] the possible
repercussions . . . for making such admissions in response to the [trial court's]
questions."

 The standard of review for evaluating claims of ineffective assistance of counsel
is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984). Strickland requires a two-step analysis whereby an appellant must show that
(1) counsel's performance fell below an objective standard of reasonableness, and (2)
but for counsel's unprofessional error, there is a reasonable probability that the result
of the proceedings would have been different. Id. at 687-94, 104 S. Ct. at 2064-2068;
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable
probability is a "probability sufficient to undermine confidence in the outcome." 
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance,
we look to the totality of the representation to determine the effectiveness of counsel,
indulging a strong presumption that his performance falls within the wide range of
reasonable professional assistance or trial strategy. Thompson, 9 S.W.3d at 813. 

 The record must affirmatively support the alleged ineffectiveness. Id. When
the record is silent, we may not speculate to find trial counsel ineffective. Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.] 1996, no pet.). Appellant
must prove ineffective assistance by a preponderance of the evidence and must
overcome the strong presumption that counsel's conduct falls within the wide range
of reasonably professional assistance or might reasonably be considered sound trial
strategy. Robertson v. State, 187 S.W.3d 475, 482-83 (Tex. Crim. App. 2006);
Gamble, 916 S.W.2d at 93. A failure to make a showing under either prong defeats
a claim for ineffective assistance. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim.
App. 2003).

 Here, appellant asserts that his trial counsel did not object during the exchange
between the trial court and appellant and "made no effort to attempt to explain to his
client the possible repercussions to his client for making such admissions in response
to the judge's questions." The record here is silent as to what advice, if any, trial
counsel may have provided to appellant before the hearing regarding appellant's right
not to testify or to make any statements to the court. Further, the State had already met
its burden to prove by a preponderance that appellant had violated at least one
condition of his community supervision by showing that he had been twice arrested
by Officer Hogg for sniffing paint. See Rickels v. State, 202 S.W.3d 759, 763-64
(Tex. Crim. App. 2006). In light of this evidence, appellant's admissions were not, as
appellant contends, "likely a substantial factor in the judge's decision" to revoke his
community supervision. In any case, the record is silent as to trial counsel's strategy. 
To find that trial counsel was ineffective in this case would call for speculation, which
we will not engage in. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994); Gamble, 916 S.W.2d at 93. Accordingly, we hold that appellant has not
satisfied the first prong of Strickland. See Strickland, 466 U.S. at 687, 104 S. Ct. at
2064. We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings 

 Justice


Panel consists of Justices Jennings, Higley, and Sharp.


Do not publish. Tex. R. App. P. 47.2(b). 
1. This appeal was originally filed in the Twelfth Court of Appeals under Docket No.
12-09-00044-CR but was transferred to the Houston First Court of Appeals. Tex.
Gov't Code Ann. § 73.001 (Vernon 2005) (giving Texas Supreme Court authority
to transfer cases from one court of appeals to another on good cause).
2. See Tex. Penal Code Ann. §§ 49.04, 49.09 (Vernon 2006).
3. See Tex. Health & Safety Code Ann. § 485.031(a) (Vernon 2003) (prohibiting
individual from inhaling, ingesting, applying, using, or possessing "an abusable
volatile chemical with intent to inhale, ingest, apply, or use the chemical in a manner"
contrary to directions for use in order to create "a condition of intoxication,
hallucination, or elation").