**Opinion filed October 11, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00334-CR
_____

## JOSE LUIS VASQUEZ, Appellant

## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-36,649**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Jose Luis Vasquez, of aggravated sexual assault of a child and assessed his punishment at confinement for fifty years in the Institutional Division of the Texas Department of Criminal justice and a fine of $10,000. In two points of error, appellant contends that he received ineffective assistance of counsel: (1) his counsel elicited testimony from him about two prior felony convictions that were otherwise inadmissible, thereby adversely affecting his credibility with the jury, and (2) his counsel failed to object to an officer's statement that the victim "was detailed enough about the incident that [the officer] believed what she was saying."

Appellant urged these two issues in a motion for new trial. After a hearing that included testimony from appellant's trial counsel, the trial court denied appellant's motion. We reverse and remand.

*Background Facts*

M.V. was ten years old at the time of trial. Her mother had divorced her father and married appellant when M.V. was a baby; she considered appellant her dad. She testified that appellant began touching the private part between her legs a year or two earlier. Appellant did that more than ten times; she did not remember how many times. However, she recalled the first time. Appellant called her name while she was in the bedroom that she shared with her brother. She went to the living room to see what appellant wanted and lay down with him. Appellant began pulling her shorts down; she told him no and said that she wanted to go to sleep. But appellant then pulled off her shorts and underwear and stuck his finger in her private part.

M.V. said that made her mad. When appellant was finished, he told her to not tell her mother, and she went back to bed. However, she did tell her mother the next morning. Her mother talked to appellant, but he said he had done nothing. M.V. remembered the last time appellant touched her because she had been to the July 4 fireworks. She was sleeping in her room when appellant began calling her. M.V. ignored him, but appellant came in, picked her up, laid her down on the sofa with him, and touched her private part again.

M.V. testified that she, her mother, and her brother did not live with appellant at the time of trial. She was afraid of appellant. Appellant had been mean to her, her mother, and her brother. She remembered a time when her mother had given her brother permission to go swimming. When her brother came home, appellant told him to cut the yard, but her mother said that it was too hot for her brother to cut the yard. Her mother and appellant began arguing, the police came, and her mother took her and her brother to her aunt's house to stay.

While at her aunt's house, M.V. told her mother for a second time that appellant had been touching her private part. She remembered that she was taken to a place called Harmony Home to talk to a lady named Nicole about the touching. She admitted at trial that some of the things she had told Nicole were wrong. For example, she told Nicole that appellant had touched her two times because she could not remember how many times appellant had done it. Appellant's counsel thoroughly cross-examined M.V. about the inconsistencies between her trial testimony and the Harmony Home interview.

2

M.V. stated that she knew that her mother did not believe her; her mother had said so the day before. That made her feel sad and hurt. M.V. said that she was confused by all the questions at Harmony Home and at times did not know what Nicole was asking her. However, she maintained that she was telling the truth at trial.

Detective Shelly Stanford with the Odessa Police Department's family violence unit was assigned to investigate the case involving appellant's possible abuse of M.V.'s brother. Because M.V.'s mother, who made the report, did not speak English, Detective Angie Reyes helped Detective Stanford with the investigation. When Detective Reyes called M.V.'s mother about an interview at Harmony Home for M.V.'s brother, the mother told her about the alleged abuse of M.V. The mother gave Detective Reyes two statements in Spanish: one concerning the alleged assault of M.V.'s brother by appellant and one concerning the possible sexual abuse of M.V. by appellant.

Detective Stanford acknowledged that a sexual assault examination of M.V. at the Medical Center Hospital yielded no physical evidence to support her claim of sexual abuse. Detective Stanford added, however, that physical evidence is lacking in the vast majority of sexual abuse cases.

Christin Abbott-Timmons, nursing director and sexual assault coordinator at the hospital, introduced M.V.'s medical record and testified about the examination of M.V. The record reflected that M.V. told the nurse, "[M]y dad touched me on my middle. He put his finger in there." Nurse Abbott-Timmons explained that a tear in the female sexual organ will heal in two days; therefore, unless digital penetration is very forceful, there will be no evidence that anything happened. The medical record concluded that no genital trauma was noted.

Shawndee Kennedy was the lead forensic interviewer at Harmony Home Children's Advocacy Center in Odessa. She explained that if a mother or a big brother does not believe a child the first time that child tells about sexual abuse, it is rare if the child ever tells anyone about the abuse again. Often, the child will recant. After the video of M.V.'s interview was played for the jury, Kennedy explained that the interview was poorly done and that was why M.V. was confused during the interview. For example, when Nicole asked M.V. her age, M.V. said she was eight years old. When Nicole immediately asked the same question again, M.V. said that she was nine. Kennedy stated that, if the interviewer asks a child the same question one right after the other, the child will assume that he or she did not give the answer the interviewer was seeking.

The mother of M.V. testified for the defense, using an interpreter. She described her call to the police, telling the police how appellant had mistreated M.V.'s brother. When the police said that they wanted to take M.V.'s brother to Harmony Home for an interview, she asked M.V. if appellant had mistreated her. After M.V. told her about appellant's sexual abuse, she gave a statement to the police that the second outcry was the first time she had learned of the abuse. At trial, she testified that M.V. had told her about the abuse much earlier. M.V.'s mother explained that she thought she would be in trouble for not reporting the abuse years earlier.

M.V.'s mother said that she had confronted appellant the day after the first assault, but he denied that it had occurred. She waited until he had had a couple of drinks before confronting him because he was always nicer after he had a few drinks. After his denial, she put a lock on M.V.'s bedroom door and slept on the sofa for a few nights. Because she never saw appellant go into M.V.'s bedroom, she concluded that the abuse had never happened. She acknowledged that, until this trial, neither she nor M.V.'s brother had believed M.V. She added that, even if appellant were released from jail, she would not go back to him because her son had said he would kill himself if she stayed with appellant.

Over objection by the State, the son and daughter of appellant, as well as his former wife, testified that they never observed appellant have anything but a good, normal relationship with M.V.

Appellant testified that he and M.V.'s mother began living together in 2000 when M.V. was four months old. His counsel then briefly questioned appellant about any felony convictions. Appellant said that he had been convicted of a felony driving while intoxicated, third offense, in 2001 but that he had successfully completed eight years of probation that had never been revoked. He also mentioned his 1999 felony conviction for possession of a controlled substance, stating that the court sent him to a drug rehabilitation institution for nine months and then discharged him.

Appellant explained his problems with M.V.'s brother. His version was that the youngster needed discipline but that his wife would not let him provide that discipline. He related one story concerning how the boy had been extremely disrespectful to his teachers; he was spanking the boy when his wife stopped him.

During cross-examination, appellant admitted that his relationship with M.V.'s brother had been rocky from the beginning, but appellant thought he had a good relationship with M.V. The prosecutor then questioned him about the two felony convictions. Appellant admitted that,

in the felony driving while intoxicated case, he had first received five years' probation that was extended to eight years. He also admitted that he had received deferred adjudication for the cocaine possession offense. Because he violated his probation rules, the court sent him to a drug rehabilitation facility and also ordered him to spend nine months in the county jail, which he had failed to mention. Appellant subsequently had another probation violation, and he stated that he was allowed to plead to a misdemeanor conviction that ended his deferred adjudication. But the State pointed out that the trial court had revoked his deferred adjudication probation and entered a judgment convicting him of possession of cocaine, a state jail felony.

Appellant consistently denied that he had ever touched M.V. inappropriately. He acknowledged that he heard M.V.'s mother testify that she did not believe M.V. until the previous day. He also acknowledged that he heard the mother testify that M.V.'s brother did not believe M.V.

In closing argument, the State argued that appellant "lied to you [the jury] time and time again." The State pointed out that appellant said he was on probation for eight years and never had his probation revoked. Yet the truth was that the trial court first placed him on probation for five years, subsequently found that he violated his probation conditions, and then extended his probation to eight years. As to his felony possession conviction, the State reminded the jury that appellant first testified that he had gone to a drug rehabilitation facility and then the charge was dismissed. The State stated that appellant had later acknowledged that his probation had been revoked and that, after he spent time in the rehabilitation facility, he also spent nine months in jail as a result of the revocation. Appellant had a final conviction for a state jail felony, possession of a controlled substance, and he had tried to minimize the conviction.

From the verdict, it is clear that the jury believed M.V. and doubted appellant's credibility.

*Hearing on Motion for New Trial*

Appellant's appellate counsel filed a motion for new trial, contending that appellant had received ineffective assistance of counsel at trial. Appellate counsel asserted that trial counsel had erroneously impeached appellant by asking appellant about felony convictions that were inadmissible under TEX. R. EVID. 609 and that counsel's errors prevented appellant from having a fair trial.

Trial counsel for appellant was an experienced defense attorney and testified that the case pivoted on the credibility of appellant versus the credibility of the child. Because of that, he

5

wanted appellant to appear to be as open and honest as possible. Having tried over fifty criminal cases, it was counsel's opinion that, if a jury believes a defendant is lying or hiding something, that jury will convict the defendant whether the defendant is guilty or not. In addition to attempting to demonstrate that appellant was honest, trial counsel's strategy was to attack the credibility of M.V. He therefore pointed out the inconsistencies between the child's trial testimony and her statements during the Harmony Home interview. Trial counsel called the mother as a witness because she had not believed her daughter.

Trial counsel believed that the State would be able to introduce the felony driving while intoxicated during cross-examination and that it would be better to preempt that subject. Pursuing his strategy, trial counsel said that was why he began the defense by having appellant acknowledge his felony convictions.

Trial counsel admitted that he had not been aware of Rule 609(c)(2). That rule provides that a felony conviction is not admissible if the person has satisfactorily completed his probation and has not been convicted for a subsequent felony or crime that involved moral turpitude. Although the felony driving while intoxicated conviction was within ten years of trial, appellant had completed his probation and had no subsequent convictions thereafter.

*Analysis*

Appellant was entitled to reasonably effective assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to counsel, however, does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) because counsel's performance fell below that objective standard, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).

In *Robertson*, the Court of Criminal Appeals held that trial counsel's performance was deficient under the first prong of *Strickland* for eliciting testimony from Robertson during guilt/innocence that he was incarcerated on two convictions that were pending on appeal; the convictions were thus inadmissible under Rule 609. Appellant contends that neither his 1999

felony conviction for possession of cocaine nor his 2002 felony DWI conviction was admissible under Rule 609. We agree.

Rule 609(a) provides that, for impeachment purposes, evidence that a witness has been convicted of a crime that was a felony or involved moral turpitude is admissible if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect. But Rule 609(b) establishes a time limit. Evidence of a conviction is not admissible under Rule 609 if a period of more than ten years has elapsed since the date of the conviction or the date of release of the witness from confinement, whichever is later, "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

In appellant's possession of cocaine case, the trial court entered its deferred adjudication order on March 11, 1997. The trial court entered its judgment adjudicating guilt on May 7, 1999. In that judgment, appellant was sentenced to one year in the Ector County Jail, with credit for 243 days in jail. The State did not challenge appellant's assertion that his confinement ended in 1999, which was more than ten years before this case began on August 18, 2010. It was appellant, not the State, that introduced this conviction at trial. Therefore, the court was not asked to determine if the probative value of the conviction outweighed its prejudicial effect. Based on the record, it appears that evidence of appellant's conviction for possession of cocaine was inadmissible.

In *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993), the Court of Criminal Appeals held that there was no distinction between a probation period that has expired and one that has been satisfactorily completed; therefore, if the witness has not been subsequently convicted of a felony or a crime involving moral turpitude, Rule 609(c) provides that the prior conviction is not admissible for impeachment purposes. The record in this case reflects that appellant completed eight years of probation for his felony DWI conviction without a revocation of his probation. Therefore, appellant's felony DWI conviction was inadmissible as evidence under Rule 609(c)(2). Appellant has satisfied the first prong of *Strickland v. Washington*.

We turn next to the second prong: whether appellant has shown that there exists a reasonable probability that the result of the trial might have been different but for trial counsel's deficient performance. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* We

7

examine counsel's errors not as isolated incidents, but in the context of the overall record. *Ex parte Menchaca*, 854 S.W.2d at 132.

Defense counsel opened the door for the State to cross-examine appellant about the two felony convictions. The State's cross-examination was effective: appellant admitted that he had originally received five years probation for his felony DWI conviction, not eight years; that the court had extended his probation because of his probation violations; that he had two previous DWIs; that he had received deferred adjudication for his possession of cocaine conviction; that he had violated that probation and was ordered to spend nine months in jail in addition to time in the drug rehabilitation facility; and that the trial court had not released him from probation as he had testified but, instead, had revoked his deferred adjudication and entered judgment convicting him of possession of cocaine.

In closing argument, the State reminded the jury of the omissions and misstatements that appellant had made concerning his two felony convictions. The implication was, of course, that appellant was not to be believed. We find that appellant was denied effective assistance of counsel. Appellant's first point of error is sustained.

Because we have sustained appellant's first point of error, we need not reach appellant's second point of error.

### This Court's Ruling

We reverse the judgment and remand the cause for further proceedings consistent with this opinion.

TERRY McCALL
JUSTICE

October 11, 2012

Do not publish. *See* TEX. R. APP. P 47.2(b).

Panel[1] consists of: Wright, C.J.,
McCall, J., and Hill.[2]

---

[1]Eric Kalenak, Justice, resigned effective September 3, 2012. The justice position is vacant pending appointment of a successor by the governor or until the next general election.

[2]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.