

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-17-00147-CR

---

CARLOS OMAR CASILLAS AKA CARLOS OMAR CASILLAS PADILLA, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1725958

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Around March 2016, Carlos Omar Casillas, aka Carlos Omar Casillas Padilla, drove an automobile from Mexico to New York City to consummate its sale to an individual in New York. After spending a few weeks in New York, Casillas traveled by bus to return to Mexico. In Texas, Casillas was arrested for suspicion of money laundering. During the investigation, police officers examined the contents of four cell phones found in Casillas' possession. On one of the cell phones, police discovered pornographic images involving children. As a result, Casillas was charged with, and pled guilty to, possession of child pornography.[1] In the case appealed here,[2] Casillas was sentenced to ten years' imprisonment.

In a consolidated brief addressing all eight cases, Casillas contends (1) that his trial counsel gave him ineffective assistance of counsel and (2) that the trial court erred in assessing a criminal technology fee. In this case, he also challenges the sufficiency of evidence supporting the trial court's assessment of his court-appointed trial counsel's attorney fees. We find that (1) Casillas has not shown that his trial counsel gave him ineffective assistance and (2) the trial court was authorized to assess costs for a criminal technology fee. However, because we find that there is insufficient evidence supporting the assessment of attorney fees against the defendant, we will modify the trial court's judgment by deleting the assessment of attorney fees. We affirm the judgment, as modified.

---

[1]*See* TEX. PENAL CODE ANN. § 43.26(a) (West 2016).

[2]In cases arising from the same incident, Casillas was also convicted of seven additional counts of possession of child pornography, which have also been appealed to this Court and addressed in opinions released the same date as this opinion in our cause numbers 06-17-00148-CR, 06-17-00149-CR, 06-17-00150-CR, 06-17-00151-CR, 06-17-00152-CR, 06-17-00153-CR, and 06-17-00154-CR.

## I.    No Ineffective Assistance of Counsel Has Been Shown

The Sixth Amendment to the United States Constitution guarantees an accused the right to effective assistance of counsel for his defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). If a conviction results from ineffective assistance of counsel, it denies the accused this valuable constitutional right. *See id.* at 687–88. The right to effective assistance of counsel does not mean, however, "errorless or perfect counsel whose competency of representation is to be judged by hindsight." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

To prevail on his ineffective assistance claim, Casillas must prove by a preponderance of the evidence that (1) his counsel's performance was deficient (that is, that it fell below an objective standard of reasonableness), and (2) it is reasonably probable that, except for his counsel's unprofessional errors, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 694; *Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011). For us to find that Casillas' trial counsel was ineffective, the trial record must affirmatively demonstrate his deficiency. *See Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). It is not sufficient to show that his trial counsel's acts or omissions were merely questionable. *Id.* We presume that trial counsel had a sound trial strategy, and this presumption cannot be overcome unless there is evidence in the record of counsel's reasons for his conduct. *Martinez*, 330 S.W.3d at 901.

In assessing the prejudice prong, "we look to the totality of the circumstances and evidence presented to determine if there is a reasonable probability that, but for Counsel's deficient performance, the result of the proceeding would have been different." *Id.* at 903 (citing *Strickland*,

3

466 U.S. at 694). "[A] reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. at 900 n.20 (quoting *Strickland*, 466 U.S. at 694). Failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record "is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance." *Andrews*, 159 S.W.3d at 102. Nevertheless, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as []he did." *Id*. However, where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Id*. at 103. Essentially, when a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do. *Andrews*, 159 S.W.3d at 102.

In his first issue, Casillas complains that his trial counsel's assistance was ineffective because he failed to investigate Casillas' Facebook profile to determine when Casillas downloaded the pornographic images. Casillas testified at the punishment hearing that he had received a private message on his Facebook from a friend asking whether he wanted to receive some images of

4

women and that Casillas had no idea that the images were of children. He claimed that he did not see the images until after they were downloaded and that if he had, he would not have downloaded them. He also testified that he downloaded the images less than a day before he was arrested. When asked why he did not immediately delete the images when he saw them, Casillas responded that he never thought about it. Casillas argues that since his statements regarding the content and timing of the Facebook message were self-serving and likely to be discredited by the fact-finder, trial counsel had a duty to investigate and corroborate his testimony. He faults his trial counsel for failing to conduct a simple search on Casillas' Facebook page that would verify the timeframe in which he received the message from his friend and downloaded the images. Casillas bases his allegation of failure to investigate on the fact that the Facebook message, or other corroborating evidence, was not offered into evidence.

However, Casillas points to no evidence in the record (and we have found none) that supports his accusation that his trial counsel failed to investigate and verify his testimony. Casillas did not file a motion for new trial in which testimony could have been elicited from his trial counsel regarding the extent of his investigation, and any evidence corroborating his testimony could have been introduced. Thus, there is no evidence in the record demonstrating that his trial counsel failed to investigate, or that any corroborating evidence exists. An equally plausible explanation for why his trial counsel did not offer the Facebook message or other corroborating evidence is that trial counsel investigated and found that the timing of the Facebook message and the download of the images would have contradicted Casillas' testimony. The presumption that trial counsel acted within the prevailing professional norms and that he was exercising sound trial strategy cannot be

5

overcome absent evidence in the record showing his deficient acts or omissions and trial counsel's explanation for his conduct. *Lopez*, 343 S.W.3d at 142–43; *Martinez*, 330 S.W.3d at 901. Since Casillas has not shown that his trial counsel's performance was deficient, we overrule his first issue.

**II.     The Trial Court Did Not Err in Assessing the Criminal Technology Fee**

In his third issue, Casillas contends that the trial court erred in including a criminal technology fee in the court costs assessed against him. Casillas does not argue that costs may not be imposed on an indigent defendant. *See Allen v. State*, 426 S.W.3d 253, 259 (Tex. App.—Texarkana 2013, no pet.) (holding that costs may be assessed against an indigent defendant so long as the assessment does not include attorney fees). Rather, he argues that any fees must be statutorily authorized and that only municipal and county courts have the statutory authority to assess a criminal technology fee, citing Article 102.0172 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 102.0172 (West 2006). However, Article 102.0169 authorizes the assessment of a fee of four dollars against a defendant convicted of a criminal offense in a county court, statutory county court, or district court. TEX. CODE CRIM. PROC. ANN. art. 102.0169 (West Supp. 2016). Since the assessment of a criminal technology fee is statutorily authorized, and the assessed fee was four dollars, we overrule Casillas' third issue.

**III.    The Trial Court Erred in Assessing Attorney Fees**

In his second issue, Casillas challenges the sufficiency of the evidence supporting the trial court's assessment of his appointed trial counsel's attorney fees as part of the costs and requests that this assessment be deleted from the judgment. In this case, Casillas requested court-appointed

counsel, and the trial court found him to be indigent when it appointed counsel for him. Once a defendant is found to be indigent, he is presumed to remain indigent unless there is evidence of a material change in his financial circumstances. TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2016).

A trial court may only order payment of the fees of appointed counsel if it determines that the "defendant has financial resources that enable [him] to offset in part or in whole" the cost of his appointed counsel. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2016). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). Therefore, the record must reflect some factual basis to support the trial court's determination. *Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.) (per curiam); *see Mayer*, 309 S.W.3d at 557.

In assessing attorney fees, the trial court stated,

I inquired about the money because I want to use that in my determination as to the defendant's indigency and his ability to make -- to pay court costs and attorney's fees, any fine that I might assess in these cases. I'm going to find that, while the one bit of testimony we heard today is that he makes 100 to $200 every 15 days -- I find that to be incredible, as well, given the totality of all of his discussions as to his finances. For instance, he had quite a bit of money, he says, when he went to New York City. He sold the car for around $8,000 and had more than $7,000 with him. Must have blown quite a bit as he stayed in hotels, not hostels, up in New York City. The reality is that Mr. Casillas has the ability to make money and certainly has the ability to pay court costs in these cases.

I don't know if the State has filed a civil forfeiture suit of the $7,000. And whether they have, I don't know their ability to be able to meet their burden to prove that. Based upon what I've just read in the PSI, I think they would have a tough row to hoe in terms of making a civil forfeiture case for the more than $7,000. I suspect, though I can't know for sure, whether that's just being held in evidence or whether they intend to return that to the defendant or whether they seek to have

> -- I believe those are filed in Judge Biard's court, civil forfeitures -- whether or not that will be forfeited to the State or not.
>
> I'm going to find that Mr. Casillas has sufficient resources to pay the Court costs and the attorney's fees in this case.

However, although the trial court did not believe Casillas' testimony regarding his bi-weekly pre-arrest income, there was no other evidence of the amount of Casillas' income upon which to base a determination that he had sufficient resources to pay his trial counsel's fees. Even though Casillas testified that he had quite a bit of money from his work with him when he went to New York, there was no testimony of the amount. Further, although Casillas testified that he had $7,000.00 on his person when he was arrested, the undisputed testimony was that the money, as acknowledged by the trial court, was impounded and may be subject to civil forfeiture. Although the trial court speculated that that money may, sometime in the future, be returned to Casillas, the Code of Criminal Procedure "requires a present determination of financial resources." *Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (speculation about future resources not allowed). Therefore, a speculation of future resources will not support a determination that Casillas presently "ha[d] financial resources that enable[d] [him] to offset in part or in whole the costs of the legal services provided to [him]." TEX. CODE CRIM. PROC. ANN. art. 26.05(g). Further, a few days after entering its judgment of conviction, the trial court appointed Casillas appellate counsel.

Therefore, we find that there is insufficient evidence to support the trial court's assessment of trial counsel's fees, and we sustain Casillas' second issue. Accordingly, we modify the trial court's judgment by deleting the assessment of attorney fees.

8

The trial court also issued an "Order to Withdraw Funds" from Casillas' inmate trust account on the date the judgment was entered, which recites that the order was entered "as part of the Judgment and Sentence of" the trial court. The order requires the withdrawal of funds from Casillas' inmate trust account in the amount of $1,804.00 as "represented in the certified Bill of Costs attached to the Judgment." The Bill of Costs shows that $1,150.00 assessed as attorney fees is included in the total amount of the Bill of Costs. We, therefore, modify the order to withdraw funds to indicate that the total of the funds to be withdrawn from Casillas' inmate trust account is $654.00.

For the reasons stated, we modify the judgment of the trial court by deleting the $1,150.00 attorney fees assessment and affirm the judgment, as modified.

Bailey C. Moseley
Justice

Date Submitted:     November 3, 2017
Date Decided:       November 8, 2017

Do Not Publish

9