Opinion filed October 11,
2012

 

                                                                       In The           

 

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00334-CR 

                                                    __________

 

                                  JOSE
LUIS VASQUEZ, Appellant

 

                                                             V.

                                      STATE
OF TEXAS, Appellee

 



 

                                   On
Appeal from the 358th District Court

 

                                                              Ector
County, Texas

 

                                                   Trial
Court Cause No. D-36,649 

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            A
jury convicted appellant, Jose Luis Vasquez, of aggravated sexual assault of a
child and assessed his punishment at confinement for fifty years in the
Institutional Division of the Texas Department of Criminal justice and a fine
of $10,000.  In two points of error, appellant contends that he received
ineffective assistance of counsel: (1) his counsel elicited testimony from him
about two prior felony convictions that were otherwise inadmissible, thereby
adversely affecting his credibility with the jury, and (2) his counsel failed
to object to an officer’s statement that the victim “was detailed enough about
the incident that [the officer] believed what she was saying.”

            Appellant
urged these two issues in a motion for new trial.  After a hearing that
included testimony from appellant’s trial counsel, the trial court denied
appellant’s motion.  We reverse and remand.

Background
Facts

            M.V.
was ten years old at the time of trial.  Her mother had divorced her father and
married appellant when M.V. was a baby; she considered appellant her dad.  She
testified that appellant began touching the private part between her legs a
year or two earlier.  Appellant did that more than ten times; she did not
remember how many times.  However, she recalled the first time.  Appellant
called her name while she was in the bedroom that she shared with her brother. 
She went to the living room to see what appellant wanted and lay down with
him.  Appellant began pulling her shorts down; she told him no and said that
she wanted to go to sleep.  But appellant then pulled off her shorts and
underwear and stuck his finger in her private part.

            M.V.
said that made her mad.  When appellant was finished, he told her to not tell
her mother, and she went back to bed.  However, she did tell her mother the
next morning.  Her mother talked to appellant, but he said he had done
nothing.  M.V. remembered the last time appellant touched her because she had
been to the July 4 fireworks.  She was sleeping in her room when appellant
began calling her.  M.V. ignored him, but appellant came in, picked her up,
laid her down on the sofa with him, and touched her private part again.

            M.V.
testified that she, her mother, and her brother did not live with appellant at
the time of trial.  She was afraid of appellant.  Appellant had been mean to
her, her mother, and her brother.  She remembered a time when her mother had
given her brother permission to go swimming.  When her brother came home,
appellant told him to cut the yard, but her mother said that it was too hot for
her brother to cut the yard.  Her mother and appellant began arguing, the
police came, and her mother took her and her brother to her aunt’s house to
stay.

            While
at her aunt’s house, M.V. told her mother for a second time that appellant had
been touching her private part.  She remembered that she was taken to a place
called Harmony Home to talk to a lady named Nicole about the touching.  She
admitted at trial  that some of the things she had told Nicole were wrong.  For
example, she told Nicole that appellant had touched her two times because she
could not remember how many times appellant had done it.  Appellant’s counsel
thoroughly cross-examined M.V. about the inconsistencies between her trial
testimony and the Harmony Home interview.

            M.V.
stated that she knew that her mother did not believe her; her mother had said
so the day before.  That made her feel sad and hurt.  M.V. said that she was
confused by all the questions at Harmony Home and at times did not know what
Nicole was asking her.  However, she maintained that she was telling the truth
at trial.

            Detective
Shelly Stanford with the Odessa Police Department’s family violence unit was
assigned to investigate the case involving appellant’s possible abuse of M.V.’s
brother.  Because M.V.’s mother, who made the report, did not speak English,
Detective Angie Reyes helped Detective Stanford with the investigation.  When
Detective Reyes called M.V.’s mother about an interview at Harmony Home for
M.V.’s brother, the mother told her about the alleged abuse of M.V.  The mother
gave Detective Reyes two statements in Spanish: one concerning the alleged
assault of M.V.’s brother by appellant and one concerning the possible sexual
abuse of M.V. by appellant.

            Detective
Stanford acknowledged that a sexual assault examination of M.V. at the Medical
Center Hospital yielded no physical evidence to support her claim of sexual
abuse.  Detective Stanford added, however, that physical evidence is lacking in
the vast majority of sexual abuse cases.  

            Christin
Abbott-Timmons, nursing director and sexual assault coordinator at the
hospital, introduced M.V.’s medical record and testified about the examination
of M.V.  The record reflected that M.V. told the nurse, “[M]y dad touched me on
my middle.  He put his finger in there.”  Nurse Abbott-Timmons explained that a
tear in the female sexual organ will heal in two days; therefore, unless
digital penetration is very forceful, there will be no evidence that anything
happened.  The medical record concluded that no genital trauma was noted.

            Shawndee
Kennedy was the lead forensic interviewer at Harmony Home Children’s Advocacy
Center in Odessa.  She explained that if a mother or a big brother does not
believe a child the first time that child tells about sexual abuse, it is rare
if the child ever tells anyone about the abuse again.  Often, the child will
recant.  After the video of M.V.’s interview was played for the jury, Kennedy
explained that the interview was poorly done and that was why M.V. was confused
during the interview.  For example, when Nicole asked M.V. her age, M.V. said
she was eight years old.  When Nicole immediately asked the same question
again, M.V. said that she was nine.  Kennedy stated that, if the interviewer
asks a child the same question one right after the other, the child will assume
that he or she did not give the answer the interviewer was seeking.

            The
mother of M.V. testified for the defense, using an interpreter.  She described
her call to the police, telling the police how appellant had mistreated M.V.’s
brother.  When the police said that they wanted to take M.V.’s brother to
Harmony Home for an interview, she asked M.V. if appellant had mistreated her.  After
M.V. told her about appellant’s sexual abuse, she gave a statement to the
police that the second outcry was the first time she had learned of the abuse. 
At trial, she testified that M.V. had told her about the abuse much earlier.  M.V.’s
mother explained that she thought she would be in trouble for not reporting the
abuse years earlier.

M.V.’s 
mother said that she had confronted appellant the day after the first assault,
but he denied that it had occurred.  She waited until he had had a couple of
drinks before confronting him because he was always nicer after he had a few
drinks.  After his denial, she put a lock on M.V.’s bedroom door and slept on
the sofa for a few nights.  Because she never saw appellant go into M.V.’s
bedroom, she concluded that the abuse had never happened.  She acknowledged
that, until this trial, neither she nor M.V.’s brother had believed M.V.  She
added that, even if appellant were released from jail, she would not go back to
him because her son had said he would kill himself if she stayed with
appellant.

Over
objection by the State, the son and daughter of appellant, as well as his
former wife,  testified that they never observed appellant have anything but a
good, normal relationship with M.V.

            Appellant
testified that he and M.V.’s mother began living together in 2000 when M.V. was
four months old.  His counsel then briefly questioned appellant about any
felony convictions.  Appellant said that he had been convicted of a felony
driving while intoxicated, third offense, in 2001 but that he had successfully
completed eight years of probation that had never been revoked.  He also
mentioned his 1999 felony conviction for possession of a controlled substance,
stating that the court sent him to a drug rehabilitation institution for nine
months and then discharged him.

            Appellant
explained his problems with M.V.’s brother.  His version was that the youngster
needed discipline but that his wife would not let him provide that discipline. 
He related one story concerning how the boy had been extremely disrespectful to
his teachers; he was spanking the boy when his wife stopped him.  

            During
cross-examination, appellant admitted that his relationship with M.V.’s brother
had been rocky from the beginning, but appellant thought he had a good
relationship with M.V.  The prosecutor then questioned him about the two felony
convictions.  Appellant admitted that, in the felony driving while intoxicated
case, he had first received five years’ probation that was extended to eight
years.  He also admitted that he had received deferred adjudication for the
cocaine possession offense.  Because he violated his probation rules, the court
sent him to a drug rehabilitation facility and also ordered him to spend nine
months in the county jail, which he had failed to mention.  Appellant
subsequently had another probation violation, and he stated that he was allowed
to plead to a misdemeanor conviction that ended his deferred adjudication.  But
the State pointed out that the trial court had revoked his deferred
adjudication probation and entered a judgment convicting him of possession of
cocaine, a state jail felony.

            Appellant
consistently denied that he had ever touched M.V. inappropriately.  He
acknowledged that he heard M.V.’s mother testify that she did not believe M.V.
until the previous day.  He also acknowledged that he heard the mother testify
that M.V.’s brother did not believe M.V.

            In
closing argument, the State argued that appellant “lied to you [the jury] time
and time again.”  The State pointed out that appellant said he was on probation
for eight years and never had his probation revoked.  Yet the truth was that
the trial court first placed him on probation for five years, subsequently
found that he violated his probation conditions, and then extended his
probation to eight years.  As to his felony possession conviction, the State
reminded the jury that appellant first testified that he had gone to a drug
rehabilitation facility and then the charge was dismissed.  The State stated
that appellant had later acknowledged that his probation had been revoked and
that, after he spent time in the rehabilitation facility, he also spent nine
months in jail as a result of the revocation.  Appellant had a final conviction
for a state jail felony, possession of a controlled substance, and he had tried
to minimize the conviction.

            From
the verdict, it is clear that the jury believed M.V. and doubted appellant’s
credibility.

Hearing
on Motion for New Trial

            Appellant’s
appellate counsel filed a motion for new trial, contending that appellant had
received ineffective assistance of counsel at trial.  Appellate counsel
asserted that trial counsel had erroneously impeached appellant by asking appellant
about felony convictions that were inadmissible under Tex. R. Evid. 609 and that counsel’s errors prevented appellant
from having a fair trial.

Trial
counsel for appellant was an experienced defense attorney and testified that
the case pivoted on the credibility of appellant versus the credibility of the
child.  Because of that, he wanted appellant to appear to be as open and honest
as possible.  Having tried over fifty criminal cases, it was counsel’s opinion
that, if a jury believes a defendant is lying or hiding something, that jury
will convict the defendant whether the defendant is guilty or not.  In addition
to attempting to demonstrate that appellant was honest, trial counsel’s
strategy was to attack the credibility of M.V.  He therefore pointed out the
inconsistencies between the child’s trial testimony and her statements during
the Harmony Home interview.  Trial counsel called the mother as a witness
because she had not believed her daughter.

            Trial
counsel believed that the State would be able to introduce the felony driving
while intoxicated during cross-examination and that it would be better to
preempt that subject.  Pursuing his strategy, trial counsel said that was why he
began the defense by having appellant acknowledge his felony convictions.

            Trial
counsel admitted that he had not been aware of Rule 609(c)(2).  That rule provides that a felony conviction is
not admissible if the person has satisfactorily completed his probation and has
not been convicted for a subsequent felony or crime that involved moral
turpitude.  Although the felony driving while intoxicated conviction was within
ten years of trial, appellant had completed his probation and had no subsequent
convictions thereafter.

Analysis

            Appellant
was entitled to reasonably effective assistance of counsel.  See U.S. Const. amend. VI; Tex. Const. art. I, § 10.  The right to
counsel, however, does not mean the right to errorless counsel.  Robertson
v. State, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).  To prove ineffective
assistance of counsel, appellant must show that (1) counsel’s performance fell
below an objective standard of reasonableness and (2) because counsel’s performance
fell below that objective standard, there is a reasonable probability that the
result of the proceeding would have been different.  Strickland v.
Washington, 466 U.S. 668, 687 (1984); Mallett v. State, 65 S.W.3d
59, 62–63 (Tex. Crim. App. 2001).  A reasonable probability is a probability
sufficient to undermine confidence in the outcome of the trial.  Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  

            In Robertson,
the Court of Criminal Appeals held that trial counsel’s performance was
deficient under the first prong of Strickland for eliciting testimony
from Robertson during guilt/innocence that he was incarcerated on two
convictions that were pending on appeal; the convictions were thus inadmissible
under Rule 609.  Appellant contends that neither his 1999 felony conviction for
possession of cocaine nor his 2002 felony DWI conviction was admissible under
Rule 609.  We agree.

            Rule
609(a) provides that, for impeachment purposes, evidence that a witness has
been convicted of a crime that was a felony or involved moral turpitude is
admissible if the court determines that the probative value of admitting this
evidence outweighs its prejudicial effect.  But Rule 609(b) establishes a time
limit.  Evidence of a conviction is not admissible under Rule 609 if a
period of more than ten years has elapsed since the date of the conviction or
the date of release of the witness from confinement, whichever is later, “unless
the court determines, in the interests of justice, that the probative value of
the conviction supported by specific facts and circumstances substantially
outweighs its prejudicial effect.”  

            In
appellant’s possession of cocaine case, the trial court entered its deferred
adjudication order on March 11, 1997.  The trial court entered its judgment
adjudicating guilt on May 7, 1999.  In that judgment, appellant was sentenced
to one year in the Ector County Jail, with credit for 243 days in jail.  The
State did not challenge appellant’s assertion that his confinement ended in
1999, which was more than ten years before this case began on August 18, 2010. 
It was appellant, not the State, that introduced this conviction at trial. 
Therefore, the court was not asked to determine if the probative value of the
conviction outweighed its prejudicial effect.  Based on the record, it appears
that evidence of appellant’s conviction for possession of cocaine was
inadmissible.        

             In Ex
parte Menchaca, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993), the Court of
Criminal Appeals held that there was no distinction between a probation period
that has expired and one that has been satisfactorily completed; therefore, if
the witness has not been subsequently convicted of a felony or a crime
involving moral turpitude, Rule 609(c) provides that the prior conviction is
not admissible for impeachment purposes.  The record in this case reflects that
appellant completed eight years of probation for his felony DWI conviction
without a revocation of his probation.  Therefore, appellant’s felony DWI
conviction was inadmissible as evidence under Rule 609(c)(2).  Appellant has
satisfied the first prong of Strickland v. Washington.

            We
turn next to the second prong: whether appellant has shown that there exists a
reasonable probability that the result of the trial might have been different
but for trial counsel’s deficient performance.  Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002).  A reasonable probability is one
sufficient to undermine confidence in the outcome.  Id.  We examine
counsel’s errors not as isolated incidents, but in the context of the overall
record.  Ex parte Menchaca, 854 S.W.2d at 132.  

Defense
counsel opened the door for the State to cross-examine appellant about the two
felony convictions.  The State’s cross-examination was effective: appellant
admitted that he had originally received five years probation for his felony
DWI conviction, not eight years; that the court had extended his probation
because of his probation violations; that he had two previous DWIs; that he had
received deferred adjudication for his possession of cocaine conviction; that
he had violated that probation and was ordered to spend nine months in jail in
addition to time in the drug rehabilitation facility; and that the trial court
had not released him from probation as he had testified but, instead, had
revoked his deferred adjudication and entered judgment convicting him of
possession of cocaine.

            In
closing argument, the State reminded the jury of the omissions and
misstatements that appellant had made concerning his two felony convictions. 
The implication was, of course, that appellant was not to be believed.  We find
that appellant was denied effective assistance of counsel.  Appellant’s first
point of error is sustained.

            Because
we have sustained appellant’s first point of error, we need not reach
appellant’s second point of error.

This
Court’s Ruling

            We
reverse the judgment and remand the cause for further proceedings consistent
with this opinion.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

October 11, 2012

Do not publish.  See Tex. R. App. P 47.2(b).

Panel[1]
consists of: Wright, C.J.,

McCall, J., and Hill.[2]

 

 









                [1]Eric Kalenak, Justice, resigned effective September 3,
2012.  The justice position is vacant pending appointment of a successor by the
governor or until the next general election.

 





[2]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth, sitting by assignment.