**Affirmed and Opinion Filed January 23, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

___

### No. 05-15-01197-CR

___

### LAWRENCE ANTHONY KOSS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

___

### On Appeal from the 282nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1341780-S

___

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Whitehill

In this ineffective assistance of counsel direct appeal, appellant challenges his forty year sentence for injury to a child with a deadly weapon by arguing that trial counsel's performance was deficient because he did not object to a CATS evaluation during sentencing or request a continuance so he could challenge its author.[1]  Because the record is silent as to trial counsel's rationale and there are strategic reasons that might explain his conduct, we cannot conclude that trial counsel's performance was deficient.  We thus affirm the trial court's judgment.

___

[1] A CATS evaluation is a Community Supervision and Corrections Department Comprehensive Assessment and Treatment Services Report.  *See Venegas v. State,* No. 05-14-00116-CR, 2015 WL 340585, at * 1, n.1 (Tex. App.—Dallas Jan. 27, 2015, no pet.) (mem. op.).  A CATS evaluation is commonly performed as part of a pre-sentence investigation report in Dallas County. *See Tollefsrud v. State*, No. 05-11-00857-CR, 2012 WL 2054789, at * 1 (Tex. App.—Dallas June 8, 2012, no pet.) (mem. op.).

# I. Background

Appellant pled guilty to injury to a child with a deadly weapon, and elected to have the court assess punishment.[2] The trial court ordered a pre-sentence report, which included the CATS report at issue.

The evidence showed that RK, appellant's seven-week-old child, was living with appellant and her mother when RK was injured. RK's mother had left her with appellant for approximately thirty minutes when appellant called and told her RK had fallen off of the couch.

RK's mother called an ambulance, and RK was taken to the hospital. RK was in critical condition, suffering from "altered consciousness," "altered breathing," and seizures. She was placed on life support in intensive care.

Dr. Michael Cox examined and treated RK. She had marks and bruises on her forehead, chest, torso, toe, and along her spinal column. She also had a bite mark on the tip of her chin. A CT scan showed that she had life threatening hemorrhaging around her brain and torn brain tissue.

Cox also observed evidence of older injuries to RK's brain and sixteen broken bones in her body that appeared to be different ages. Cox said that RK could not have inflicted her injuries on herself, and opined that the injuries were caused by some type of object.

RK survived her injuries, but has permanent brain damage. Cox said that this damage could lead to movement, learning, and behavioral problems as she gets older.

Detective Jolynn Lopez testified about her investigation of the offense. At the hospital, appellant provided her with an affidavit that was admitted into evidence. Lopez also saw RK at the hospital, and the version of events appellant gave her was not consistent with the baby's injuries.

---

[2] Appellant rejected the State's plea bargain offer for twenty-five years imprisonment.

Appellant was subsequently interviewed at the police station, and the videotape of that interview was admitted into evidence. The video at one point shows appellant alone in the interview room pacing back and forth and ranting. When appellant was interviewed, he told Lopez several different versions of the facts. He was arrested when the interview ended.

After the first day of the sentencing hearing concluded, the judge told appellant, "based on the evidence I have heard today . . . I think you're a danger to society and I'm holding your bond insufficient."

On the second day of the sentencing proceedings, the court took judicial notice of the pre-sentence report, which it and counsel had previously reviewed. Also that morning, the State received the CATS evaluation as a supplement to the pre-sentence report and provided it to counsel and the court. Defense counsel reviewed the CATS report and discussed it with appellant. After the trial judge reviewed the report, he took judicial notice of it, and defense counsel stated that he had no objection.

The CATS report, authored by Katherine Pasche, M.S., LPC ("Licensed Professional Counselor"), summarizes her impressions about appellant after she interviewed him.[3] It also includes information from the police report and states that appellant was evaluated for problems that might interfere with the successful completion of probation. But the report makes no recommendation as to whether probation should be granted.[4]

Pasche instead identifies five recommendations for appellant's probation conditions "If the court chooses to place [appellant] on probation," including: (i) an anger management program, (ii) individual counseling to improve appellant's communication, conflict resolution, and coping skills, (iii) participation in parenting classes, (iv) participation in an employment

---

[3] Although the record does not explain this designation, we understand it to mean a "Licensed Professional Counselor." *See* TEX. OCCUPATIONS CODE, Ch. 503 ("Licensed Professional Counselors").

[4] The report, initially submitted under seal, was unsealed by this court's order pursuant to the State's motion.

assistance program, and (v) thirty day monitoring with a drug patch to determine if treatment is warranted. The report also states that appellant would likely comply with the terms of community supervision, and confirms that he had family and financial support, and has a low risk of reoffending.

The ten page Pasche report, however, says that appellant reported a pattern of animal cruelty from childhood to the present. Specifically, appellant said that he terrorizes animals, screams at them, and "scares them half to death." Appellant also said that on occasion, when he was working at Wal-Mart, he thought about knocking some boxes over in the shipping department to kill a man who had been sexually harassing a friend. But he also said that he had not had any other thoughts of homicide.

Appellant told Pasche that he was treated by a psychologist from when he was in third grade until he was eighteen, and was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). But Pasche opined that appellant's childhood "behavior such as fighting and bullying others, engaging in animal cruelty, stealing and running away from home are consistent with a diagnosis of Conduct Disorder rather than [ADHD]."

Appellant's mother and father also testified. Both said they would provide financial and emotional support if appellant received probation. His minister and another acquaintance also testified on his behalf.

When the sentencing hearing concluded, the trial judge said:

> I've handled child abuse cases over 20 years. I've seen cases with worse injuries. I've seen cases involving death. I have never seen a case that involved this many injuries in a short seven weeks of a child's life. And those injuries did not occur in one incident. According to Dr. Cox there were at least three. I suspect there were more. There was repeated abuse of this child and it is a miracle that she survived. I think you're a danger to society. I'm not willing to subject another child nor an adult to the type of violence that you're capable of inflicting. I think that would be very negligent of me to do so.

–4–

The court then found appellant guilty of inflicting serious bodily injury on a child with a deadly weapon and sentenced him to forty years imprisonment.

## II.    Analysis

Appellant's sole issue complains that his trial counsel was ineffective because he "did not object at all to the conclusions in the report," or seek a continuance to challenge the report's author.  According to appellant, the report introduced new matters into evidence, including that he (i) was a serial animal abuser from childhood to the present; (ii) had homicide ideation; and (iii) suffered from a conduct disorder that ripened into antisocial personality disorder in adulthood, and Pasche was not competent to render these opinions.

## A.    Standard of Review and Applicable Law

We review ineffective assistance of counsel claims under the *Strickland v. Washington,* 466 U.S. 668 (1984) standard.  Under *Strickland*, the defendant must prove that (i) his or her trial counsel's representation was deficient, and (ii) the deficient performance was so serious that it deprived him or her of a fair trial.  *Id*. at 687.

Counsel's representation is deficient if it falls below an objective standard of reasonableness.  *Id*. at 688.  A deficient performance, however, deprives the defendant of a fair trial only if it prejudices the defense.  *Id*. at 691–92.  To show prejudice, appellant must demonstrate there was a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different.  *Id*. at 694.  Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.  *Id*. at 697.

The *Strickland* test also applies to claimed deficiencies during sentencing.  *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (holding the two-pronged

*Strickland* test applies to claims of ineffective assistance of counsel during non-capital sentencing proceedings).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's strategy, we will not conclude that the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Thus, in many cases, the defendant cannot meet the first *Strickland* prong because the direct appeal record is underdeveloped and does not adequately reflect trial counsel's alleged failings. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

In addition, a sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of counsel's performance for examination. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence. *See Mata*, 226 S.W.3d at 430. Rather, to establish counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must demonstrate counsel's errors were so

serious that he was not functioning as counsel.  *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Accordingly, when a defendant claims that his counsel was ineffective for failing to object to evidence, he generally must show that the evidence was inadmissible.  *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002).

**B.      Did counsel's conduct fall below an objective standard of reasonableness by not objecting to the CATS report or requesting a continuance?**

Appellant maintains that counsel should have objected to the CATS report's conclusions because (i) Pasche is not a licensed psychologist or psychiatrist and was "likely incompetent to render such an opinion about personality disorders" and (ii) because the report does not include sufficient facts or analysis to support this diagnosis.  He further complains that the report refers to extraneous offenses.  Appellant also asserts that his counsel should have sought a continuance to address the report.  According to appellant, there could be no reasonable trial strategy behind counsel's conduct.  We disagree for several reasons.

First, appellant was requesting probation and the report had positive aspects, including Pasche's opinion that appellant would be likely to comply with probation terms and that he had family and financial support.  The report also said that appellant had expressed regret about his conduct.  Without the report, the only evidence favorable to awarding appellant probation would have come from friends and family.

Second, two of the conclusions appellant complains about—an instance of homicide ideation and a history of yelling at the family dogs—could have required appellant's testimony to rebut them.  Counsel thus could reasonably have concluded that having appellant testify and subjecting him to cross-examination would not well serve appellant's interests.

Third, having Pasche testify and further explain her conclusions might not have served appellant's interest.  Additional detail may have reinforced the report's negative aspects, which

testimony might have harmed appellant's probation request. And while Pasche is not a psychiatrist or psychologist, the record does not exclude the possibility that she could have been otherwise qualified as an expert and allowed to give opinion testimony. Thus, appellant has not demonstrated that Pasche's opinions would have been inadmissible. *See Ortiz*, 93 S.W.3d at 93.

Fourth, the record provides no facts indicating that the trial court would have necessarily granted a continuance or that a reasonable lawyer would have necessarily thought that appellant's case would improve with time.

Finally, we note that appellant and his counsel conferred about the report, and the record is silent as to appellant's wishes and counsel's advice about the report and a possible continuance. What appellant now describes as counsel's deficiency could well have resulted from counsel following appellant's directive.

Absent evidence regarding the underlying rationale for the alleged shortcomings in counsel's performance, and given the strong presumption that appellant's counsel was effective, we cannot conclude that counsel's performance fell below the professional norm here, and appellant has not met the first *Strickland* prong.

## C. Has appellant shown harm from the alleged deficiencies?

Given our prior disposition under the first *Strickland* prong, we need no and do not reach the prejudice element.

## III. Conclusion

Because appellant has not met his *Strickland* burden, we resolve his sole issue against him and affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

151197F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

LAWRENCE ANTHONY KOSS, Appellant

No. 05-15-01197-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1341780-S.
Opinion delivered by Justice Whitehill.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 23, 2017.